6 301
8 200
22* 164
30* 748

6 301
21 118

MARCUS B. BUFORD AND OTHERS, RESPONDENTS, v. SIMON J. LONERGAN AND ANOTHER, APPELLANTS.

CONTRACT.—PAROL EVIDENCE TO EXPLAIN WRITING.—Where a contract of sale of cattle provided that the parties of the first part would sell, transfer and deliver to the parties of the second part all of their herds of cattle excepting one thousand head of steers reserved and theretofore contracted to be sold, parol evidence is admissible to show that the one thousand head of steers so reserved and theretofore sold were of the ages of two years old and upwards.

ID.—PAYMENT UNDER DURESS.—KNOWLEDGE OF FACTS.—Before the day of delivery plaintiffs had paid a large part of the price and defendants refused to deliver until the full balance of purchase price was paid, and plaintiffs paid it, but at the time protested and claimed the right to deduct the price of the cattle not delivered, it being the season of winter when the property required the personal care of the owner and was liable to loss and deterioration if left in possession of the defendants; held, that such payment was made under duress and could be recovered back even though plaintiffs knew all the facts.

APPEAL from a judgment of the district court of the

first district and from an order denying a motion for a new trial. The opinion states the facts. ·

Mr. O. W. Powers and Messrs. Hall & Marshall for the appellants.

Mr. W. H. Dickson and Mr. Charles S. Varian for the respondents.

ANDERSON, J.:

On the seventeenth day of July, 1886, the defendants, by contracts in writing, sold to the plaintiffs all their possessory rights to any and all ranches or ranges then and theretofore held and occupied by them, with all water-rights, fences, and improvements, situated in the counties of Oneida, in Idaho, and Box Elder, in Utah, together with all their herds of cattle then on said ranges, excepting two thousand head of steers previously sold, one thousand of which steers had already been selected and driven away, and the other one thousand to be selected and driven off within ninety days from July 15, 1886. The sale also included six mares, forty-nine saddle horses, and all the wagons, harness, saddles, and other property owned by defendants and used in said ranches. As a basis for estimating the number of cattle sold, and the amount to be paid by plaintiffs, the contract recited that fifteen hundred calves had already been branded in the year 1886, and provided that defendants should continue the branding of calves, the increase of stock then on the range, until December 1, 1886, giving to plaintiffs an opportunity to be present at such branding; the whole number of calves to be branded; including the fifteen hundred already branded, not to exceed twenty-two hundred and fifty, and none to be branded after December 1, 1886, at which time all the property and premises were to be delivered to them; and that the herds should be estimated to contain three head of cattle for every calf so branded, or three times the number of calves branded in the year 1886, prior to December 1st. Plaintiffs were to pay defendants for all the cattle and property purchased

from them a sum equal to thirty dollars per head for all the cattle delivered, the number to be ascertained by the number of calves branded. The contract provided for two partial payments, and that the third and last payment should be made when the defendants should finish their branding and deliver all the property sold to plaintiffs. Delivery was made December 10, 1886. Prior to December plaintiffs had paid defendants on the property $175,500. On the day of delivery there was still due defendants, according to the number of calves that had been branded, $27,000, if all the property was ready to deliver according to the contract. Plaintiffs claim, however, there were four hundred and twenty-two yearling steers, forty cows, heifers and steers, and two buggy horses, which were on the ranches when they purchased, but which could not be delivered, of the aggregate value of $14,110, which amount they claimed the right to deduct from the amount to be paid. Defendants, however, refused to make delivery of any of the property sold under the contract, unless the full amount should be paid. Whereupon plaintiffs, having no means of obtaining possession of the property except by litigation, paid the full $27,000 under protest, and brought this action to recover the $14,110 paid for the property to which they claimed to be entitled but had not received. The cause was tried by a jury, resulting in a verdict and judgment in favor of plaintiffs for $6,631.63, and the defendants appealed to this court. The contention at the trial in the district court was as to whether plaintiffs were entitled to have delivered to them all the yearling steers which were on the ranches at the date of the July contract, and whether parol evidence was admissible for the purpose of showing what classes or ages of steers defendants had previously sold, to be reserved out of the herds, and whether plaintiffs could recover the value of any property paid for, but not delivered to them, as having been paid under duress. The plaintiffs alleged in their complaint that it was understood at the time of making the written contract, by all the parties thereto, that the one thousand head of steers reserved from the sale were steers of a certain class—two

years old and upwards. The defendants, by their answer, denied there was any such understanding, and alleged that it was understood by all the parties that the one thousand steers reserved included yearlings and steers of all ages. The defendants contended that, the contract being plain and unambiguous and susceptible of a legal construction, parol evidence was not admissible to explain, vary, or contradict its terms, and that, as the contract provided that the herds should be estimated to contain three head of cattle for every calf branded, plaintiffs were bound by this provision, and that it made no difference whether the one thousand steers reserved and to be taken out were of the ages of one year, or of two years and upwards. Plaintiffs were permitted to introduce evidence, against the objection of defendants, tending to show that the one thousand steers reserved were steers which had been previously sold to one Hawkes by defendants, and were of the age of two years old and upwards, and that this fact was understood by all the parties to the contract, and this ruling is assigned as error.

The rule that "parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument," does not exclude evidence of extrinsic facts necessary to a full understanding of the meaning of the parties. "It is directed only against the admission of any other evidence of the language employed by the parties in making the contract than that which is furnished by the writing itself. The writing, it is true, may be read by the light of surrounding circumstances in order more perfectly to understand the intent and meaning of the parties; but, as they have constituted the writing to be the only outward and visible expression of their meaning, no other words are to be added to it or substituted in its stead." 1 Greenl. Ev. Sec. 277. The same author says: "If the language of the instrument is applicable to several persons, to several parcels of land, to several species of goods, to several monuments or boundaries, to several writings, or the terms be vague and general, or have divers meanings, * * * in all these and the like cases parol evidence is admissible of any extrinsic circumstances tending to show

what person or persons, or what things, were intended by
the party, or to ascertain his meaning in any other respect."
Id. Sec. 288.    Thus, where the agreement was for a certain
number of casks of black lead, parol evidence was held ad-
missible to show what kind of casks was intended.    *Keller*
v. *Webb*, 125 Mass. 88.    So parol evidence may be intro-
duced to show what persons were meant by the designation
of "Horace Gray and others" in a written agreement.
*Herring* v. *Iron Co.*, 1 Gray, 134.    And in a contract for
extending the time of payment of "certain notes" held by
one party against the other, parol evidence was held ad-
missible to show what notes were so held and intended.
*Bell* v. *Martin*, 18 N. J. Law, 167.    So, in a written agree-
ment to pay a party $1,700, in lawful currency of the
United States, in an order of W. & T., parol evidence was
held admissible to show that the order was to be for sash
and blinds, and not for money.    *Hinnemann* v. *Rosenback*,
39 N. Y. 98.    See, also, to the same effect, 2 Pars. Cont.
(5th Ed.) 549; *Bancroft* v. *Grover*, 23 Wis. 463; *Ball* v.
*Benjamin*, 73 Ill. 39; *Pinney* v. *Thompson*, 3 Iowa, 74;
*Pierce* v. *Parker*, 4 Metc. 80; *Reed* v. *Insurance Co.*, 95
U. S. 23; *Montelius* v. *Atherton*, 6 Colo. 226.    Under the
contract with the defendants the plaintiffs bought, and
were entitled to have delivered to them, all the cattle of
whatsoever kind or age then on the defendants' ranches,
except the one thousand steers mentioned therein as hav-
ing already been sold and not delivered.    The contract re-
served one thousand steers, but is silent as to the class or
ages of the steers reserved.    The contract with Hawkes,
under which the one thousand steers had been sold, speci-
fied the classes or ages of the steers sold to him.    If de-
fendants had sold to Hawkes one thousand steers without
reference to their ages, then, under their contract with
plaintiffs, they could have selected out steers of any age to
fill the Hawkes contract, and plaintiffs would have had no
ground of complaint.    The contract with plaintiffs only
showed how many steers were reserved.    There was a latent
ambiguity in plaintiffs' contract as to the ages of the steers
reserved, and as they were reserved to fill the Hawkes con-
tract, it was proper to resort to it to explain this ambiguity.
20

No yearling steers had been sold to Hawkes, and hence none were reserved, and none could be withheld from plaintiffs. The parol evidence was admissible, not to vary or contradict the terms or language of the contract, but to show the sense in which the term "steers" was used, by applying it to the subject-matter and the situation of the parties at the time of making the contract, in order that its enforcement might be in accordance with the understanding of the parties to it.

The court instructed the jury that, if they found the plaintiffs, in order to obtain possession of the property mentioned in the contract, were compelled when making the final payment to pay for any property to which they were entitled, but which was not delivered to them, such payment was in law a payment under duress, and might be recovered back. The giving of this instruction is assigned as error. Counsel for defendants insist that, as plaintiffs knew when they made the final payment that all the property which they claim should have been delivered to them was not delivered, the payment was voluntarily made, with full knowledge of all the facts, and hence was not a payment under duress. The court stated the law correctly. In *Baldwin* v. *Steamship Co.*, 74 N. Y. 125, the defendants, as common carriers, transported certain boxes from New York to London for a stipulated sum, but, upon learning that the contents of the boxes were of much greater value than they supposed when they received them for shipment, refused to deliver them to the consignee without the payment of an additional sum, which was accordingly paid, and it was held that the money so paid could be recovered back as having been paid under duress of goods. In *Harmony* v. *Bingham*, 12 N. Y. 99, a common carrier, having in his possession a large amount of valuable merchandise, exacted for freight more than was due as a condition of its delivery to the owner, and the latter, to obtain possession of the property, paid the amount wrongfully demanded under protest, and it was held that it was not a voluntary payment, and he could recover it back. In *Stenton* v. *Jerome*, 54 N. Y. 480, the defendants, who were stock-brokers, held two United States bonds belonging to the

plaintiff, which they threatened to sell unless she paid a balance on account claimed by them. Plaintiff had great need of the bonds, and could not well wait for the slow process of the law to restore them to her, and she paid this balance, not assenting to the account, and not assenting that it was justly due, for the sole purpose of releasing her bonds. The court said: "Under such circumstances it is well settled that the law does not regard a payment as voluntary." Counsel for defendants refer us to *Wolfe* v. *Marshal*, 52 Mo. 167. In that case the court says: "A payment of money upon an illegal and unjust demand, when the party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or property of the party from detention, or when the other party is armed with apparent authority to seize upon either, and the payment is made to prevent it." Counsel also cite *Radich* v. *Hutchins*, 95 U. S. 210, where it is said: "To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making payment." Counsel also cite *Peyser* v. *Mayor*, 70 N. Y. 497. In that case, FOLGER, J., speaking for the court, said: "I have spoken of coercion in fact and coercion by law. By the first I mean that duress of person or goods where present liberty of person or immediate possession of goods is so needful and desirable as that an action or proceedings at law to recover them will not at all answer the pressing purpose." The rule laid down in these cases is not in conflict with the law as given to the jury by the court below, and is as favorable to appellants as any of the numerous cases cited by defendants' counsel. The possessory right to the ranges, ranches and water sold to plaintiffs covered a large part of an area sixty miles square. There was some personal property used in connection therewith, and nearly seven thousand head of cattle, and over fifty head of horses ranging thereon. Plaintiffs had already paid $175,000 pur-

chase money for this property. Delivery was refused by defendants until an illegal and unjust demand for property not delivered was paid. It was in the midst of winter, when the property required the personal care of the owner. Plaintiffs were compelled to either pay this demand or seek redress by tedious and expensive litigation, the property remaining meantime in the possession of parties hostile to plaintiffs' interest, and liable to great deterioration and loss. Payment under such circumstances was not a voluntary payment, and, being made under duress, may be recovered back; and the fact that it was made with knowledge of all the facts makes no difference. See *Adams* v. *Schiffer* (Colo.) 17 Pac. Rep. 21; *Spaids* v. *Barrett*, 57 Ill. 289; *Hackley* v. *Headley*, 45 Mich. 569, 8 N. W. Rep. 511; *McPherson* v. *Carr*, 86 N. Y. 472. The judgment of the district court is affirmed.

ZANE, C. J., concurred.