78   273
84   519

78      273
p92    433

# Jacob Windmiller v. The People of the State of Illinois, for the use of Pike County.

1. SALARY—*The Term Defined.*—The term "salary" means a reward or recompense paid for personal service. As applied to a public officer, it means the compensation paid him for his personal services in the discharge of the duties of his office.

2. OFFICERS—*Salary and Compensation Used as Synonymous Terms Under the Constitution.*—The term salary does not include money necessarily paid to others as expenses in performing the duties of an office. It is not a correct use of the word, because the Constitution uses the term "compensation;" but where the word "salary" has been used it has the same meaning as the word "compensation." The term, as used in this case, does not include a deputy's hire.

3. COUNTY BOARDS—*Duty in Fixing Compensation of Officers.*—It is the duty of the county board, acting under the Constitution, to fix the compensation of all county officers, with the necessary clerk hire, stationery, fuel and other expenses, and to fix clerk or deputy hire wherever the employment of deputies is necessary to a proper administration of the affairs of the office.

4. SALARY—*Of County Officers, How it May be Fixed.*—The salary of county officers may be fixed by what is commonly called a "lump order," or by an order fixing it separate from the "compensation" allowed the officer.

5. SAME—*Where the Board Fixes No Compensation for Clerk or Deputy.*—Where a county board in such a case fixes compensation only, and does not provide for clerk or deputy hire, and the employment of a clerk or deputy is necessary, the officer who pays such clerk or deputy hire from the earnings of the office can not be held liable for the amount so paid out.

6. CONSTRUCTION—*Of Orders—County Boards.*—The following order of a county board—"Ordered that the sheriff be allowed all the fees and emoluments of said office, as his salary, not to exceed eighteen hundred dollars ($1,800), and no more,"—indicates that the matter of deputy hire was not considered, and that it was the intention to allow the sheriff $1,800 per annum for his personal salary.

7. ESTOPPEL—*Of County Officer by His Report.*—It is the duty of a county officer to report all fees collected from time to time and in his various reports, and to show what had been paid by him for deputy hire; but his failure to do so will not work a forfeiture of his right to claim for such credits or estop him and his sureties from setting them up when sued on his official bond.

8. CONTRACTS—*Rule of Construction.*—A court will place the same construction upon a contract which the parties to it have themselves placed upon it.

Debt, on an official bond. Trial in the Circuit Court of Pike County; the Hon. THOMAS N. MEEHAN, Judge, presiding. Finding and judgment for plaintiff. Appeal by defendant. Heard in this court at the May term, 1898. Reversed and remanded. Opinion filed October 5, 1898.

W. E. WILLIAMS, MATTHEWS & GRIGSBY, W. H. CROW and JEFFERSON ORR, attorneys for appellant.

J. D. HESS, EDWIN JOHNSTON and WM. MUMFORD, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

This was an action of debt on the official bond of Jacob Windmiller, sheriff of Pike county from December, 1886, to December, 1890, to recover for fees collected and not reported by him.

Section 10, Article 10, of the Constitution, provides that " the county board shall fix the compensation of all county officers, with their necessary clerk hire, stationery, fuel and other expenses, and in all cases where fees are provided said compensation shall be paid only out of, and shall in no instance exceed, the fees actually collected."

In September, 1886, the County Board of Pike County, in fixing the compensation of county officers to be elected in November of that year, adopted the following order as to sheriff:

" That the sheriff be allowed all the fees and emoluments of said office, as his salary, not to exceed eighteen hundred dollars ($1,800) and no more."

During Windmiller's term the earnings of the office amounted to $11,568.45, of which he collected $10,368.45. Of the amount collected he paid out $3,168.45 for deputy hire, and reported altogether as collected $7,109.22.

After his terms of office had expired he had a settlement with the county board, as evidenced by an adopted report of a committee on salaried officers, which reads as follows:

" We, your committee on salaried officers, would respectfully report that we have carefully examined the report of

Jacob Windmiller, ex-sheriff, and find the same correct and entirely satisfactory, and recommend its approval. We would also report that from statement there is due said Windmiller the sum of $258.78, and that there are uncollected fees due said sheriff amounting to the sum of about $1,200, and that we have settled with Mr. Windmiller as follows: We have assigned to Mr. Windmiller all uncollected fees due the sheriff at this time, in consideration of the payment to the county treasurer the sum of $500, and the release of said Windmiller of said sum of $258.78 due him from the county, which settlement shall be in full of all debts due, and demands of the county against said Windmiller or of the said Windmiller against the county."

Windmiller subsequently paid into the county treasury $500, in accordance with the terms of the settlement.

Upon the trial below, a jury being waived, the court charged Windmiller with the $3,168.45 paid for deputy hire, credited him with the $500 paid into the county treasury and rendered judgment for $2,668.45.

As we view it, the case hinges entirely upon the construction of the order of the county board fixing the salary of Windmiller at $1,800. Appellant contends that the $1,800 is exclusive of deputy hire. Appellee contends that it includes deputy hire, and that contention was adopted by the trial court.

We recognize the rule of law which authorizes a court to place the same construction upon a contract which the parties to it have themselves placed upon it, and note the testimony of members of the county board showing that they considered the order as allowing Windmiller to pay deputy hire from the earnings of the office over and above his salary allowance; but the construction which individual members of the board placed upon the order would not be admissible. The only competent evidence of what construction was given by the county board would be evidence of some official act. While it is also contended that such construction was sufficiently evidenced by acts of the committee on salaried officers, and other acts of the board, all appear-

ing of record, we prefer to reach a construction independent of such aid.

The term "salary" means a reward or recompense paid for personal service. As applied to a public officer, it means the compensation paid him for his personal service in the discharge of the duties of his office. It does not include money necessarily paid to others as expenses in performing the duties of the office. It is not a correct use of the word, because the Constitution says "compensation;" but where it has been thus used it is held to have the same meaning as that word. We most hold, therefore, that the term as used by the board in the case at bar does not include deputy hire unless there is something in the order manifesting such intent. It is the duty of the county board, acting under the constitutional requirement, to "fix the compensation of all county officers, with their necessary clerk hire, stationery, fuel and other expenses;" to fix clerk or deputy hire wherever the employment of deputies is necessary to a proper administration of the affairs of the office. That may be done in what is commonly called a "lump order," or by fixing it separate from the "compensation" allowed the officer; but where the board has in such a case fixed compensation only, and has not undertaken to provide for clerk hire, and the employment of a clerk or deputy is necessary, the officer paying deputy hire from the earnings of the office should not, and in our view of the law can not, be held liable to the county for the amount paid out.

What is there in the order of the county board to evidence an intention that the $1,800 should be regarded as a "lump order?" What is there to show that the board considered the matter of deputy hire for the sheriff? The insistence of counsel for appellees that the words "and no more" relate to the fees and emoluments of the office, and consequently mean "no deputy hire," is not justified by anything appearing in the order, and is really negatived by the use of the same words at the end of the orders relating to the county judge, county clerk and county treasurer. As to the county judge, for instance, the order reads: "That

the judge of the County Court be allowed the sum of thirteen hundred dollars ($1,300) and stationery, per annum, during his term of office, and no more." We think a proper interpretation of the words means that the sheriff should have no more salary than $1,800. Their use at the end of the order was entirely unnecessary, of course, as it was at the other orders, because the Constitution inhibits the payment of any greater compensation to an' officer than that fixed at the commencement of his term of office.

We must hold, therefore, that there is nothing in the order of the county board fixing the compensation of officers elected in 1886 to indicate that the matter of deputy hire for the sheriff was considered, and that it was the intention to allow him $1,800 per annum for his individual compensation.

It is contended that Windmiller is estopped from claiming for amounts paid for deputy hire because he, in none of his reports, asked credit for such expenditures. It was his duty, of course, to have reported all fees collected from time to time, and in his various reports to show what had been paid by him for deputy hire; but his failure to do so would not work a forfeiture of his right to claim for such credits, or estop him and his sureties from setting them up when sued on his official bond. County of Schuyler v. Bogue, 38 Ill. App. 48.

It is also contended that even if the board did not fix the deputy hire, and the conditions were such as to entitle Windmiller to a deputy, his proper remedy was by mandamus against the board. Our courts do not carry the right to mandamus to the extent contended for by appellees. And if such right existed the failure of Windmiller to avail himself of it could not be taken advantage of by the county in this litigation. The head and front of appellee's argument under this head is: It was the duty of the county board to make an order under which Windmiller could have applied earnings of the office to necessary deputy hire. Having failed to discharge its duty in that regard it should have been compelled to do so by mandamus at the

suit of Windmiller; but as Windmiller failed to compel, by mandamus, a performance of that duty, the county may take advantage of that and the dereliction of its own representative body, to defeat Windmiller out of earnings of his office which justly belong to him.

, We do not care to further extend this opinion by a discussion of the question of the power of the board to sell the uncollected fees for $500. In the view taken by us upon the main question in controversy that one is not involved. Some forty-three propositions of law were presented to the court by appellants. Many of them were refused and many modified so as to conform with the idea of the court that the word "salary," as used in the order, by implication included deputy hire. It would render the opinion too lengthy to single them out and show wherein the court erred. We deem it sufficient to say, that construction placed upon the order by the trial court was erroneous, and reverse the judgment for that reason. We remand the cause that it may be tried upon lines which agree with the views herein expressed. Reversed and remanded.