JOSEPH ABBA, APPELLANT, v. D. A. SMYTH, RESPONDENT.

STATUTE OF FRAUDS—SEC. 2467, R. S. 1898—NOTE OR MEMORANDUM
SUFFICIENT—WHEN PAROL EVIDENCE ADMISSIBLE—STATUTE
HOW PLEADED—UNILATERAL CONTRACT.

*Statute of Frauds—Sec. 2467, R. S. 1898—Note or Memorandum Sufficient.*

Under Sec. 2467, R. S., unless the essential terms of the contract can be determined from the contract itself, it is within the statute of frauds; and if thus defective the defect can not be supplied by parol proof, for by admitting parol testimony to supply the essential parts of the contract, would be to restore the mischief which the enactment of the statute of frauds was framed to prevent.

*When Parol Evidence Admissible.*

While parol evidence is not admissible to add to or vary the terms of a written contract, yet it may be admitted to show compliance by one party and a fulfillment of the contract terms by him.[1]

*Unilateral Contract—Statute of Frauds.*

Where a written contract for the leasing of a farm on shares creates mutual obligations between the parties thereto, both are bound by such reasonable construction thereof, as the terms of the contract imply. Such a contract is not unilateral, nor void under the statute of frauds.

*Statute, How Pleaded.*

The plea of the statute of frauds is a personal privilege, which a party may waive; and when the action is on a contract, admitted by defendant, he must interpose the special plea of the statute of frauds to make it available in his defense.[2]

----

[1] *Brown* v. *Markland,* 16 Utah, 360; *Buford* v. *Lonergan,* 6 Utah, 301, cited.
[2] *Wilson* v. *Sullivan,* 17 Utah, 341; *Muldoon* v. *Brown,* 21 Utah, 121, cited.

(Decided December 2, 1899.)

Appeal from the Second District Court, Weber County, Hon. H. H. Rolapp, *Judge*.

Action by the plaintiff to recover damages on account of an alleged breach of a written contract. From a judgment for defendant, plaintiff appealed. *Reversed*.

*Herbert R. Mac Millan, Esq.*, and *Hiram H. Henderson, Esq.*, for appellant.

An agreement in its first inception may lack mutuality, and may have no consideration expressed, yet certain acts may afterward be done by the party not bound in the first instance, which will give the agreement mutuality and a consideration. *Jones* v. *Snow*, 2 Pac. R., 29; *Harvesting King Co.* v. *Mitchell, et al.*, 89 Fed. Rep., 173; *Bloom* v. *Hazard*, 37 Pac. (Cal.), 1037; *Reedy* v. *Smith*, 42 Cal., 250; *Boyd* v. *Brincklin*, 55 Cal., 427; *Brooks* v. *Leathers*, 70 N. W., 1099; *Mc Cartney, et al.* v. *Glassford*, 20 Pac. 423; *Clarn* v. *Grayson*, 46 Pac., 428–429; *Detroit H. & L. Co.* v. *Stevens*, 16 Utah, 181.

The agreement in controversy was signed by both parties, so that it is taken out of the statute of frauds, and even if the same had not been signed but had been executed, the court would not permit the defendant to take advantage of the statute of frauds. *Lynch* v. *Coviglio*, 17 Utah, 112.

*W. L. Maginnis, Esq.*, and *Messrs. Richards & Allison*, for respondent:

"A contract must be mutual as to the remedy, and a contract will not be enforced against a party who does not possess the power under the contract to enforce it upon his part." *Ryan* v. *Dumpy*, 1 Pac., 710; *Richardson* v. *Hardwick*, 106 U S., 252; *Wilkinson* v. *Heavenrich*, 58 Mich., 574.

" Whatever the rule may be when the contract is fully performed, it is well settled that the part performance will not give a right to insist on the completion of the residue or recover damages from the opposite party for his refusal to allow the accomplishment of the whole." *Peter* v. *Compton*, 1 Smith L. Cas., 631, (8th ed.); *Utah L. & T. Co.* v. *Garbutt*, 23 Pac., 758; *Utah L. & T. Co.* v. *Garbutt*, 6 Utah, 342.

The doctrine that part performance of a contract will make valid a contract invalid by the statute of frauds is exclusively the creature of equity, and applies only to contracts relating to land. *Mc Elroy* v. *Ludlum*, 32 N. J., Eq., 828; *Wheeler* v. *Frankenthal*, 76 Ill., 124; *Osborn* v. *Kimball*, 41 Kan., 187; *Comes* v. *Lawson*, 16 Conn., 246; *King* v. *Welcome*, 5 Gray, 45; *Utah L. & T. Co.* v. *Garbutt*, 6 Utah, 342.

"A party performing services under a contract invalid by the statute of frauds can not sue upon the contract to recover compensation for his services. The only remedy in such cases is upon a *quantum meriut.*" *Mc Elroy* v. *Ludlum*, 32 N. J., Eq., 828; Browne on Statute of Frauds, Sec. 124; *Towsley* v. *Moore*, 30 O. S., 184; Keene on Quasi Contracts, Sec. 127.

### STATEMENT.

This action was brought by plaintiff Abba against defendant Smyth to recover damages alleged to have been sustained on account of the alleged breach of a written contract, of which the following is a copy:

" Ogden, Utah, April 7, 1898.

" This agreement entered into between D. A. Smyth, of Ogden, Utah, party of the first part, and Joseph Abba, party of the second part, of Warren, Utah. It is agreed by the party of the first part to employ. the party of the second

part to work on the farm owned by the party of the first part, the party of the second part to receive half of all the crops raised on the farm, the party of the first part to receiye thirty-five (35) tons of hay and fifty (50) bushels of oats to be taken out from the farm before the division. The remainder to be equally divided between the two parties to this agreement. The party of the first part agrees to furnish all seeds, farming implements, horses and wagons, and the board and lodging of the party of the second part, and to furnish a man to help on the farm. And further agrees to furnish water to mature crops. This agreement to continue during the farming seasons of the years 1898, 1899, and 1900.

D. A. Smyth,

Witness, E. Auth.                Joseph Abba.''

Plaintiff alleges, in substance, in his complaint that in pursuance of said contract he did on the 7th day of April, 1898, enter upon defendant's farm, and did work and performed services thereon to and including the 27th day of November, 1898; second, that he fully and faithfully performed, so far as he has been permitted by defendant, the conditions and agreements contained in said contract on his part to be performed; that defendant has failed and refused to carry out his part of said contract, in that he has refused and still refuses to furnish the farming implements, horses, and water to mature the crops as agreed, and thereby the crops were damaged and injured to his great damage; and third, that by the terms of the contract it was mutually agreed by the parties that defendant was to employ plaintiff, and the plaintiff was to serve the defendant during the years 1898, 1899, and 1900 by working on defendant's farm on shares; but that defendant failed to carry out his part of the contract

and refused to permit plaintiff to fulfill his part thereof, and has repudiated the same and drove the plaintiff from off said farm, and threatened him with violence if he remained thereon.

That plaintiff has offered and endeavored to perform his part of said contract, and has at all times been ready and willing so to do, and by reason of the breach of said contract by defendant aforesaid, plaintiff has been thrown out of employment, and has been unable to obtain other employment after reasonable efforts, to his damage.

The answer admits the execution and delivery of the contract; denies the allegations in the third count, in part; alleges that the plaintiff neglected said farm and permitted the crops thereon to be damaged; that plaintiff remained away from said farm at various times, and finally abandoned it; that defendant performed, on his part, all conditions provided in the written contract, and sets up a counter-claim for its violation by plaintiff.

Plaintiff testified that on the 7th day of April, 1898, he commenced work on said farm, plowed, planted corn, beans, trimmed trees, irrigated land, and did all the work he could do, and neglected nothing, that defendant's farm consisted of 160 acres, half of which was under cultivation and in crops.

Plaintiff then offered testimony tending to show how many bushels of wheat were raised, and under the third count offered to show that on the 7th day of April, 1898, he entered upon the farm in pursuance of the contract, which was delivered to him by the defendant, and worked continuously thereon until November, 1898; that defendant then ordered plaintiff off the farm, and he was compelled by him to leave it; that no water was furnished by defendant to irrigate the crops as agreed, and that damages to the plaintiff resulted therefrom.

Defendant objected to this testimony on the grounds that it was immaterial, irrelevant, and incompetent, and that no cause of action is stated; that the written instrument is a unilateral agreement, and only binds defendant; that plaintiff was not bound by said contract, and that the same is void for want of mutuality; that it is not to be performed within one year, and is void under Sec. 2467, Rev. Stat., and parol evidence is inadmissible to vary or add to its terms. The objection was sustained, and plaintiff duly excepted.

Plaintiff then offered to show that 35 tons of hay and 50 bushels of oats were delivered to defendant by plaintiff as agreed in the contract; that it was understood and agreed that plaintiff should go on and work the farm for three years under that agreement.

Plaintiff also offered to show what crops were raised on the farm in 1898, as bearing upon the question of damages, and failure on the part of the defendant to furnish water for irrigation. This was objected to as before, and the objection sustained by the court, to which exception was taken. Thereupon, under instructions from the court, the jury brought in a verdict in favor of the defendant of no cause of action. This appeal is taken from the judgment.

After stating the facts, *Miner*, *J.*, delivered the opinion of the court.

The first question for determination is, Was the contract void under the statute of frauds ? Sec. 2467, Rev. Stat., 1898, reads as follows: " *Certain agreements void unless in writing.* In the following cases every agreement shall be void, unless such agreement or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith."

Under this section unless the essential terms of the contract can be determined from the contract itself, it is within the statute of frauds, and if thus defective, the defect can not be supplied by parol proof, for by admitting parol testimony to supply the essential parts of the contract, would be to restore the mischief which the enactment of the statute of frauds was framed to prevent. 2 Kents Comm. (12th ed.), 511; *Williams* v. *Morris*, 95 U. S., 456; *Norris* v. *Lane*, 16 Johns (N. Y.), 151.

While this is true, yet "Any note or memorandum in writing which furnishes evidence of a complete and practical agreement is sufficient under the statute, and parol evidence is admissible to explain latent ambiguities, and to apply the instrument to the subject-matter." *Williams* v. *Morris*, 95 U. S., 444; *Barry* v. *Coombe*, 1 Pet., 640; *Clark* v. *Burnham*, 2 Story, 131; Story on Sales, 257; *Brown* v. *Markland*, 16 Utah, 360.

In Pomeroy on Contracts, Sec. 85, the following rule is laid down:

"The memorandum, whether consisting of one writing or of several, must contain all the essential terms of the agreement so stated that, while parol evidence may, perhaps, be resorted to for purposes of identification, and to explain the situation of the parties and of the subject-matter, it shall not be required to supply any substantive feature which has been omitted. While the memorandum must thus embrace the substance of the contract, it need not describe the terms in a complete and detailed manner; it is enough that what the parties have really assented to can be gathered from the writing, and is not left to the recollection of witnesses. When this requirement is complied with, the demands of the statute are satisfied, however brief and informal the document may be."

Under the light of these authorities was the contract

sufficiently complete; first, to show who the parties were; second, the subject-matter; third, the agreement on both sides; fourth, the consideration.

While this contract is loosely drawn, yet it is reasonably certain as to all the necessary requirements of a memorandum as required by the statute. The meaning of the contract construed in the light of the subject-matter and the words used, and without the use of extrinsic evidence, is reasonably plain. From its reading it is apparent that Smyth, the party of the first part, entered into an agreement with Abba, the party of the second part, and both parties signed the agreement. Each party agreed with the other to all that is contained in the contract. They both agreed in writing, first, that Smyth employ Abba to work on Smyth's farm, and that Abba should receive for such work, which he agreed to perform, one half of all crops raised on the farm, but before division of the crops so raised, Smyth should receive 35 tons of hay and 50 bushels of oats, and that the remainder of the crops should be divided equally between Smyth and Abba. Smyth also agreed to furnish Abba all seeds, farming implements, horses, and wagons, and to board and lodge Abba during the period of the lease while Abba was working the farm, and was also to furnish a man to help Abba on the farm, and to furnish water to mature the crops so being raised. The agreement should continue during the farming seasons of 1898, 1899, and 1900. By signing this agreement both parties agreed to its terms, and if a breach occurred by the fault of either, liability would follow. Each part of the contract is as much Abba's as it is Smyth's. By it Abba agrees to enter the employ of Smyth during the years 1898, 1899, 1900, and work his farm, and for his compensation he first agrees to give Smyth 35 tons of hay and 50 bushels

of oats, before a division of the balance of the crops raised; and second, he agrees that the balance of the crops raised each year shall be equally divided between Smyth and himself. Abba also agrees that Smyth shall furnish him the seeds, farming implements, horses, and wagons with which he is to work the farm, as well as lodging and board, and that during the working season Smyth should furnish water with which to mature the crops while growing during the period named, and also furnish a man to assist him. Abba agrees to work the farm during the term named on these conditions.

These facts, though not all stated, are clearly implied from the contract itself, and therefore become a part of it.

On the very day the contract was made Abba entered upon the farm and commenced to work, and continued to work it, raising and harvesting crops from April 7th to November 28th, 1898, without objection by the defendant. At this time, it appears, he was ejected from the farm by commands and threats of the defendant.

The rule invoked by the respondent that when only one of the parties signs the contract, such party only becomes bound thereby, does not apply here, as both parties signed the contract, and it was mutually binding upon both. By signing the contract both became obligated by its terms and consented to its provisions, and should be held bound by such reasonable construction as the contract implies. The agreement was not unilateral, but bound both parties to it. It was not void under the statute of frauds, as both parties executed the writing which imposed mutual obligations on each.

. But it is claimed that the testimony was inadmissible, and was rejected on the ground that it was irrelevant, immaterial, and incompetent; that it was unilateral and only bound the defendant; that it lacked mutuality, and was therefore void under the statute of frauds.

As already stated, we do not concur in this view. It is true that evidence was not admissible to contradict, add to, or vary the terms of the contract, but evidence was admissible to show that the plaintiff complied with his part of it, and fulfilled its terms. It was competent to show that on the day the contract was made plaintiff immediately commenced to work on the farm in performance of his agreement; that he put in and harvested crops, delivered to defendant his proper share thereof; that the defendant failed to perform its condition on his part, and neglected to furnish water to mature the crops; to show the damages resulting from defendant's violation of the agreement, how the parties treated the contract; and what interpretation they placed upon it. Plaintiff could show that defendant permitted him to work the farm for six months and then drove him off, and refused to let him proceed under the contract. These were all pertinent matters, and proof thereunder was admissible.

In *Brown* v. *Markland*, 16 Utah, 360, this court held: "In the light of what was said and done at the time of a transaction, of the conduct of the parties thereafter, and of the interpretation which they themselves have placed upon it, a court is more likely to arrive at the real meaning and intent of the parties when the terms employed in an instrument are indefinite and ambiguous. Such evidence is not received to vary the language of the writing, but to explain what was meant by its use. It serves to explain the subject-matter, and enables the court to determine what the instrument referred to and embraced. Its object is to elucidate the meaning of the parties." *Windmiller* v. *People*, 78 Ill. App., 273; *Buford* v. *Lonergan*, 6 Utah, 301.

Upon an examination of the answer it will appear that no issue under the statute of frauds was raised therein.

The statute of frauds was not plead, nor was any defense such as was interposed at the trial set out. So far as appears, the plaintiff had no notice of the defense that was interposed until the trial had commenced. The answer denies part of the allegations in the complaint; admits the execution of the written instrument; alleges that the plaintiff remained away and neglected the farm at various times; that defendant duly performed all the conditions of the written contract, by him to be performed, and claims damages against the plaintiff under a counter-claim interposed because plaintiff had not performed his part of said contract.

By admitting the contract, alleging its fulfillment by defendant and non-fulfillment by the plaintiff, and claiming damages for such non-fulfillment by plaintiff, the defendant was hardly in a position to insist upon the statute as a bar to the action, or to urge that the contract was unilateral and binding upon the defendant only. In effect the answer admits the contract, asserts its binding force upon both parties, claims under it, relies upon its breach by plaintiff, as a ground upon which to recover damages for its non-fulfillment, and yet this court is asked to say that the contract is unilateral, lacks mutuality, and was void under the statute of frauds. It is useless to assert that defendant has not acted upon and treated the contract as binding upon both parties.

The plea of the statute of frauds is a personal privilege which a party may waive, and by failing to specifically plead it as a defense, defendant could not afterward avail himself of its benefits. This is the general and approved rule. *Wilson* v. *Sullivan*, 17 Utah, 341; *Lauer* v. *Richmond*, Co-op. Inst., 8 Utah, 305; Wood on the Statute of Frauds, Sec. 538; 9 Enc. of Pl. & Pr., pp. 705, 713, and cases cited; *Gill* v. *Clement*, 59 Mo. App., 484; *Muldoon, et al.*, v. *Brown, et al.*, 59 Pac., 720; 21 Utah, 121.

If the defendant admits the contract, he must still interpose the defense of the statute of frauds in his answer, in order to make it available in his defense. *Maybee* v. *Moore*, 90 Mo., 343; 9 Enc. of Pl. & Pr., p. 713, and cases cited; *Iverson* v. *Cirkel*, 56 Minn., 299; *Connor* v. *Hingtgen*, 19 Neb., 472; *Ashmore* v. *Evans*, 11 N. J. E., 151; *Duffy* v. *O'Donovan*, 46 N. Y., 223; *Barrett* v. *McAllister*, 33 West Va., 738.

We are of the opinion that the court erred in rejecting the testimony offered tending to show a compliance with the contract on the part of the plaintiff, and a breach thereof on the part of the defendant, and in holding the contract to be unilateral and not binding upon the plaintiff, and in holding the contract void under the statute of frauds.

Under the circumstances, if desired, each party should be allowed to amend their pleading on such terms as the trial court may deem just.

The cause is reversed, and remanded to the district court with directions to grant a new trial.

Plaintiff is entitled to costs.

BARTCH, C. J., concurs.
BASKIN, J., concurring in result.

The defense of the statute of frauds is a personal privilege which may be waived.

In this case the defendant expressly admitted the making of the contract in his answer, and alleged a performance of the same on his part, and the breach of the same on the part of plaintiff, and by way of counter-claim sought to recover $500 damages for such breach.

In view of these facts the defendant waived the defense of the statute of frauds, and it was not an issue in the case.

That portion of the opinion of my associates which holds in accordance with the views which I have expressed, disposes of the question of the statute of frauds, and the balance of the opinion on that subject is *obiter dictum.*