451 P.2d 769

**Harold D. RAINFORD, Plaintiff and Respondent,**

**v.**

**William R. RYTTING and Suzanne H. Rytting, Defendants and Appellants.**

**No. 11276.**

Supreme Court of Utah.

March 14, 1969.

Carman E. Kipp, and J. Dennis Frederick, of Kipp & Charlier, Salt Lake City, for appellants.

Golden W. Robbins, Salt Lake City, John S. Moore, Jr., of Velikanje, Moore & Countryman, Yakima, Wash., for respondent.

CALLISTER, Justice:

Appellants, the Ryttings, appeal from a summary judgment holding them liable as guarantors of a corporate contract for the repurchase of its stock from plaintiff-respondent, Rainford.

The parties to this action were the shareholders, officers and directors of The Carriage House, Inc., a Washington corporation, engaged in the retail and whole-sale merchandising business. Mrs. Rytting

was president and owned 33 shares of stock; her husband was vice president and owned 32 shares; Rainford was secretary-treasurer and owned 25 shares.

On the 27th of May, 1966, the Ryttings, as corporate officers, entered into a conditional sale of stock agreement on behalf of the corporation to repurchase Rainford's 25 shares of stock for the price of $2500, payable in installments of $100 per month, commencing the 10th of August, 1966. The purpose of the agreement was to enable Ryttings to wind up the corporate affairs in the State of Washington and return to the State of Utah. After the execution of the agreement, the inventory and merchandise were disposed of by sale as were the fixtures of the store. As part of the agreement, the Ryttings personally guaranteed full payment and performance of the contract. Rainford, having received no payments, commenced this action.

On appeal, appellants contend that the trial court erroneously granted summary judgment, since there was a dispute as to a material issue of fact raised by the pleadings and affidavits; and under Washington law, the sales contract was illegal and therefore void, and they, as guarantors, were not liable when the principal obligation was invalid.

William R. Rytting filed an affidavit in opposition to plaintiff's motion for summary judgment and stated that a specific condition of the agreement between the parties was that the proceeds of the sale of the fixtures and an air conditioner owned by the corporation in the approximate sum of $1200, and accounts receivable in the approximate sum of $500 owing to the corporation, were to apply to the purchase price of the stock. Plaintiff, Rainford, filed an affidavit denying both the agreement and that he had ever received an air conditioner, fixtures or receivables. Appellants contend that there was put in issue the factual question of whether or not there was an understanding or agreement that existed at the time of execution of the sale agreement, whereby an offset or credit was to be applied to the purchase price of plaintiff's stock.

The stock purchase agreement did not contain any provisions setting forth the alleged condition. On the contrary, paragraph 7 of the agreement provides:

There are no conditions or provisions of the agreement between the parties hereto relating to the subject matter of this contract which are not contained herein, nor representations nor warranties not expressly contained herein. The contract contains the entire agreement between the parties hereto.

We must agree with respondent that appellants are trying to vary the terms of the written agreement by parol evidence, i. e., to establish a different contract on

facts known at the time of reducing their understanding to a written form.

\* \* \* The rule is well settled that, where the parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, be conclusively presumed that the writing contained the whole of the agreement between the parties, that it is a complete memorial of such agreement, and that parol evidence of contemporaneous conversations, representations, or statements will not be received for the purpose of varying or adding to the terms of the written document. \* \* \*[1]

■ The action of the trial court in the instant case must be sustained, since appellants' affidavit consisted entirely of inadmissible parol evidence, submitted for the purpose of varying and adding to the terms of the written agreement of the parties. An affidavit in opposition to a motion for summary judgment to be effective must set forth such facts as would be admissible in evidence. Rule 56(e), U.R.C.P.[2]

Appellants further contend that the corporate stock repurchase agreement under Washington law was illegal and void;

and, therefore, since the principal obligation was invalid, they, as guarantors, cannot be held liable.

Under the statute in effect in the State of Washington at the time of the execution of the contract (R.C.W. 23.01.120, which was repealed in 1967), which was before the trial court, a corporation was empowered to purchase its own stock provided that the corporation did not use funds or property for the purchase, when such use would cause any impairment of the capital stock of the corporation. This statute was interpreted to mean that such repurchase could only occur when it would not diminish the corporation's ability to pay its debts or lessen the security of its creditors by reducing the amount of the assets of the company below the amount represented by the aggregate outstanding shares of the capital stock of the company.[3]

■ In Burk v. Cooperative Finance Corp.,[4] the court observed that the repurchase of stock is not void in its inception; rather, it is the impairment of capital resulting from repurchase payments which is verboten.

Appellants generally alleged that the corporation was insolvent at the time of the execution of the agreement; this allega-

1. B. T. Moran, Inc., v. First Security Corp., 82 Utah 316, 329, 24 P.2d 384, 389 (1933).
2. Preston v. Lamb, 20 Utah 2d 260, 263, 436 P.2d 1021 (1968).
3. Jackson v. Calagrossi, 50 Wash.2d 572, 313 P.2d 697, 699 (1957).
4. 62 Wash.2d 740, 384 P.2d 618, ·625 (1963).

tion by itself is insufficient, since the critical factor is whether the repurchase payments would divert funds and thus adversely affect the rights or security of the corporate creditors.[5]

■ From the foregoing we conclude that the agreement in the instant case was valid, the corporation was merely prohibited from using any of its funds or property for the repurchase which would diminish the corporation's ability to pay its debts or lessen the security of its creditors by reducing the amount of its assets below the amount represented by the aggregate outstanding shares.

In the instant action we are presented with a rather anomalous situation. By the terms of the contract, the corporation had all rights to the stock including the right to vote and receive dividends. After the corporation had received these rights from its third shareholder, the two remaining shareholders, the defendants, who were also the remaining active directors and officers of the corporation, proceeded to liquidate the corporate assets and move from Yakima, Washington, where the corporate business had been conducted. The de facto demise of the corporation must be acknowledged. After plaintiff had been effectively foreclosed by the agreement from participating in the corporate decision to liquidate and to share in any proceeds derived therefrom, the defendants, the guarantors of the corporate contract, now assert the agreement was void from its inception. Under the specific facts of this case, we find their position untenable.

■ Another aspect of this case which reinforces the judgment of the trial court is an exception to the Washington rule that generally the liability of the principal debtor measures and limits the liability of a surety, namely, a guarantee of an existing contract may stand by itself, although the obligation guaranteed is unenforceable, provided that it can be fairly said that such was the intention of the parties.[6] In the instant action, the facts and circumstances reveal an intention on the part of the guarantors, the two remaining shareholders in a closed corporation, to eliminate a minority shareholder; so that they could deal with the corporate assets without his intervention or participation in an anticipated liquidation. Certainly, the parties did not contemplate that the guarantors could escape liability merely on the basis that the corporate entity might avert payment under certain circumstances.

5. See 6A Fletcher Cyclopedia Corporations (1968 Rev. Vol.) § 2861, p. 406: "The corporation itself cannot have the purchase declared illegal, in states where such a purchase is allowable under some conditions, even if injured stockholders or creditors might have that right. * * *"

6. Robey v. Walton Lumber Company, 17 Wash.2d 242, 135 P.2d 95, 103, 145 A.L.R. 924 (1943).

Practically, the parties intended the de facto demise of the corporate entity in the State of Washington, and the guarantors unconditionally promised payment upon any default by the corporation. Having guaranteed performance by the principal debtor in a contract from which the guarantors derived substantial benefit, the trial court properly concluded that it was the intention of the parties that the appellants should be liable under their guaranty agreement regardless of the alleged defect in the sales contract.[7]

The judgment of the trial court is affirmed, with costs awarded to respondent.

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

7. See A. M. Castle & Co. v. Public Service Underwriters, 198 Wash. 576, 89 P.2d 506, 513 (1939).