461 P.2d 460

**SECURITY LEASING COMPANY, a corporation, Plaintiff and Appellant,**

v.

**FLINCO, INCORPORATED, a corporation, Defendant, Respondent and Third-Party Plaintiff.**

**No. 11627.**

Supreme Court of Utah.

Nov. 25, 1969.

Stephen G. Morgan, Salt Lake City, for plaintiff-appellant.

Dwight L. King, Salt Lake City, for defendant-respondent and third-party plaintiff.

CROCKETT, Chief Justice.

Security Leasing Company, lessor, sues claiming Flinco, Incorporated, lessee, had wrongfully breached a five-year lease on certain business equipment known as a Friden Computyper and a Tab Card Punch Control unit. Flinco's defense was justifiable rescission on the ground that the equipment did not perform the service in accordance with their agreement. The trial court made findings and rendered judgment in favor of the defendant. Plaintiff appeals, contending errors in (1) admitting evidence in violation of the parol evidence rule; (2) finding against the weight of the competent evidence; and (3) not finding that the defendant was barred from rescission by laches or estoppel.

Flinco is engaged in the automobile supply business in Salt Lake City. In April, 1965, it had been looking for a better means to handle its business records. Its manager, one Bob Mastelotto, talked to John B. Johnson of Office Equipment Associates. It was decided that the purpose would be served by Johnson procuring a Friden Computyper which was owned by Security Leasing Company. On behalf of Flinco Mr. Mastelotto signed a printed lease form, and also an adjunctive agreement, to lease the machine for a period of five years. The written documents make no specific mention of the fact, but it is not disputed, that the machine could only perform the intended purpose if it was programmed to handle Flinco's particular business, and that this was to be done by Mr. Johnson.

After the Computyper was installed at Flinco's business and Mr. Johnson had done some work on programming it for their business procedures, Mr. Mastelotto signed a third document called a "Completion Certificate." It stated, inter alia, that "all installation or other work necessary to the use" of the machine had been completed satisfactorily and had been accepted by Flinco. Some months later, in March, 1966, another piece of equipment, referred to as "Tab Card Punch Control Unit" was acquired by Security Leasing and leased to Flinco. A fourth document was executed covering the leasing of this latter equipment. Subsequent to these events, on December 2, 1966, Flinco sent a letter to Security Leasing stating in substance that notwithstanding what had been done, the equipment did not give satisfactory results

and requested that the equipment be removed from its premises. This was done, and this suit was brought for damages which would result from failure to keep it for the remainder of the five-year term.

At the heart of the plaintiff's case is the contention that the four documents mentioned above should be looked upon as an integrated whole, constituting a contract in writing binding the defendants to lease the equipment for the full term of five years; and that it was in violation of the parol evidence rule to admit testimony and other evidence to impair that obligation. We recognize the validity of the rule that where parties have negotiated and reduced their intentions to a writing to which they have both assented as a complete and accurate representation of their understanding, evidence of antecedent or contemporaneous agreements are not ordinarily admissible to vary or contradict the terms of that writing.[1] While the premise upon which that rule is based—the preservation of the integrity of written instruments—is valid as a generality, caution should be observed in order that competent and relevant evidence is not excluded under specious pretexts as to its proper application.[2]

The foundation which must be established before the rule has application is that there is in fact a contract in writing which represents the complete agreement between the parties. Where the circumstances are such that it is evident that the writing does not cover some essential aspect of the transaction, outside evidence may be resorted to to determine what was to be done about it.[3] Inasmuch as the method of operation of this Computyper is such that it could not perform the intended service for Flinco unless it was programmed into the latter's business, and the documents referred to do not spell out what was to be done about that aspect of the service, it was not only permissible, but necessary that the trial court receive and consider other evidence to resolve the dispute between the parties as to whether the documents represented their complete agreement.

The plaintiff's second point on this appeal: that there was not sufficient evidence to support the findings and judgment, is related to and dependent upon its first point, just discussed. Having concluded

1. See Youngren v. John W. Lloyd Const. Co., 22 Utah 2d 207, 450 P.2d 985 (1969), Rainford v. Rytting, 22 Utah 2d 252, 451 P.2d 769 (1969). Cf. Corbin on Contracts, Sec. 573, and authorities therein cited.

2. Ibid.; and see 32A C.J.S. Evidence § 929 p. 311; 30 Am.Jur.2d 168.

3. Corbin, Contracts § 573 at 359–62, § 583 (1960); see also In re Goff's Estate, 191 Kan. 17, 379 P.2d 225; Moore v. Emerson, Okl., 325 P.2d 437; Gravelle v. Burchett, 73 Nev. 333, 319 P.2d 140; American Mining Co. v. Himrod-Kimball Mines Co., 124 Colo. 186, 235 P.2d 804.

that the trial court was correct in admitting and considering evidence outside the written documents, the plaintiff's second contention fails. That evidence shows that in oral conversations Security Leasing undertook the duty of having the Computyper programmed; and this was also corroborated by a written purchase order.[4] In addition to the testimony of Flinco personnel that the Computyper did not perform the intended service, there is evidence that it was because it was not properly processing the data and giving correct totals that the Tab Card Punch Control Unit was later acquired to supplement its work and lessen the deficiencies of which Flinco was complaining; and that notwithstanding this additional equipment, the programming which was to have been done in stages never did reach the point where Flinco could obtain accurate and expeditious information concerning its business operations. There is therefore ample support for the finding that the defendant was justified in refusing to further perform the lease agreement.

 The traditional rules as to the trial court's prerogative in finding the facts also apply to the plaintiff's contention of estoppel and laches; and these further observations are pertinent. On the question of whether the defendant was guilty of undue delay in giving up the contract, and on the equities between the parties, it is significant to note that the efforts to work out the programming of the equipment into the defendant's business were continuing from time to time; and that the defendant kept up its monthly rental payments for the entire period it had the equipment. There is thus a basis upon which the trial court could believe that the defendant's waiting as long as it did to see if it could be made to work satisfactorily was not an unreasonable delay which redounded to the disadvantage of the plaintiff.[5] We, therefore, do not see the evidence as compelling a finding of laches or estoppel.

Affirmed. Costs to defendant (respondent).

TUCKETT and ELLETT, JJ., concur.

CALLISTER, Justice (dissenting).

The majority opinion is premised on the assumption that the written agreement did not cover an essential aspect of the transaction, namely, the matter of programming of the Computyper for Flinco's business. The majority, therefore, concluded that the trial court properly found that there was no integrated written document that contained all the agreements of the parties and ad-

---

4. That the "parol" evidence rule applies also to writings, see Corbin, Contracts Sec. 573, P. 358.

5. That laches is not made out by mere delay, but requires delay which causes disadvantage to another, see Mawhinney v. Jensen, 120 Utah 142, 232 P.2d 769.

mitted oral evidence to determine what was the arrangement between them.

I cannot agree with this analysis and believe it is a covert attempt to contradict, add, or vary the terms of the written agreement.

Plaintiff leased a chattel for a five-year term for a specified sum to defendant. Since this agreement cannot be performed in one year, it is within the statute of frauds, Sec. 25–5–4(1), U.C.A. 1953.

Under this section, unless the essential terms of the contract can be determined from the contract itself, it is within the statute of frauds, and, if thus defective, the defect cannot be supplied by parol proof, for by admitting parol testimony to supply the essential parts of the contract, would be to restore the mischief which the enactment of the statute of frauds was framed to prevent.[1]

It is significant that defendant did not assert that the contract was void under the statute of frauds, but took the position that it had a binding contract, of which an oral provision had been breached by plaintiff. The trial court found that as a result of the failure of plaintiff to program the Computyper fully to meet the needs of the daily operation of defendant's business, there had been a failure of consideration and granted a judgment of no cause of action

Defendant, in fact, attempted to enlarge the terms of the contract and to impose obligations on the plaintiff additional to those stated in the writing. The mere fact that the Computyper could not perform the service for Flinco unless it was programmed does not mean that plaintiff was contractually obligated to do so. The same reasoning could be applied to an automobile rental agreement—the fact that the automobile will not function without fuel does not mean that the lessor is obligated to supply the gasoline.

" * * * The rule is well settled that, where the parties have reduced to writing *what appears to be a complete* and *certain agreement,* it will, in the absence of fraud, be *conclusively presumed* that the *writing contained* the *whole* of the *agreement* between the parties, that it is a complete memorial of such agreement, and that parol evidence of contemporaneous conversations, representations, or statements will not be received for the purpose of varying or adding to the terms of the written document. * * * "[2] [Emphasis added.]

The rationale of the foregoing presumption appears particularly applicable to the instant situation, where the effect of the

---

1. Abba v. Smyth, 21 Utah 109, 115, 59 P. 756, 757 (1899).

2. Rainford v. Rytting, 22 Utah 2d 252, 255, 451 P.2d 769, 770 (1969).

addition of an oral agreement which is described as an essential term of the contract, is to render the contract void under the statute of frauds. It should again be emphasized that defendant pleaded neither mistake nor fraud.

There is one other aspect of this action which merits attention; the oral agreement, as found by the trial court, contradicts the terms of the written agreement, namely, the Completion Certificate, which provides:

> * * * that all installations or other *work necessary prior to the use* thereof has been *completed;* that said chattels have been examined and/or tested and are in good operating order or condition, and *are in all respect satisfactory to Undersigned and as represented,* and that said chattels have been *accepted* by Undersigned *for the purpose* of said Equipment Lease. [Emphasis added.]

The finding of the trial court that there was a continuing obligation on the part of the lessor to program the machinery, as the lessee planned on putting the programming into the Computyper in stages starting with its accounts receivable and invoicing operations, directly refutes the express terms of the completion certificate.

This case should be reversed and remanded to the trial court for an appropriate disposition in accordance with this opinion.

HENRIOD, J., concurs in the dissenting opinion of CALLISTER, J.