**PETER DAVIS, Plaintiff**

v.

**AIR INDIES CORPORATION, Defendant**

# Civil No. 176-1972
# District Court of the Virgin Islands
Div. of St. Thomas and St. John

# July 19, 1973

PALLME & ANDUZE, ESQS., St. Thomas, V.I., *for plaintiff*

GRUNERT, STOUT, HYMES & MAYER, ESQS., St. Thomas, V.I., *for defendant*

YOUNG, *Judge*

MEMORANDUM OPINION

This case is before the Court on cross-motions for summary judgment by both sides. In addition, the plaintiff seeks, alternatively, a preliminary injunction.

The facts which brought about this litigation are these. On July 10, 1970, the plaintiff Peter Davis and the defendant corporation entered into a stock purchase agreement whereby the corporation would acquire 72,000 shares of its own stock then owned by the plaintiff. The terms of payment were set out at paragraph 2(ii) of the agreement, with the agreed upon sale price being $25,000. That sum was to be payable in installments, without interest, and payments were to be made:

(a) $10,000 in two (2) equal installments due July 10, 1971, and July 10, 1972; and

(b) the balance of $15,000 in two (2) equal installments due July 10, 1973, and July 10, 1974.

Pursuant to that agreement the plaintiff transferred the shares to the corporation. On the due date of the first installment the corporation did not make payment. And to date no monies have been paid under the agreement. As a result of these factual circumstances plaintiff on September 21, 1971, gave notice to Air Indies of his desire to rescind the agreement and called for the return of the stock. Having gotten no satisfaction Davis then filed this suit.

To substantiate his position, Davis argues two theories upon which he concludes that the relief he now seeks can be granted. They are by their nature mutually exclusive. First, he asserts that the purchase agreement was illegal at its inception and, therefore, as a matter of public policy he would require the rescission and the return of the stock he transferred to Air Indies. Second, he reasons that if the agreement was sound at its inception, it nevertheless became void upon failure to make the first and subsequent installment payments. Yet, because of handwritten language in the contract, which in essence provides that the corporation may defer payments until it is able to legally do so, Davis chose to have his motion rise or fall on the basis of the first theory: void at inception.

The defendant corporation opposes the plaintiffs motion for summary judgment with one of its own. Air Indies takes the position that the transaction is valid and that Davis has no right to the shares. It asks for summary judgment and dismissal of the suit.

Inasmuch as Air Indies is a Delaware corporation, the law of that jurisdiction will apply to resolve the issues presented here. Davis urges that § 160 of the Delaware Corporation Law, Del. Code Ann., Tit. 8, § 160, prohibits the type of transaction entered into by these two parties. That statutory section provides:

"Every corporation organized under this chapter may purchase, hold, sell and transfer shares of its own capital stock; but no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any *impairment of the capital of the corporation.*"[1]

---

[1] The statutory preclusion against impairing the capital of the corporation through a transaction which involves the purchase of the corporation's own stock

[m]eans that the funds and property of the company shall not be used for the purchase of shares of its capital stock when the value of its assets is less than the aggregate amount of all of the shares of its capital stock outstanding.

Ashman v. Miller, 101 F.2d 85, 90 (6th Cir. 1939) (construing Section 19 of the General Corporation Act of Delaware, predecessor provision to Section 160).

Air Indies concedes that at the time the contract was drawn and the agreement entered into it lacked sufficient capital to make the payment at that moment had it been required to do so. Similarly, at the due date of the first and subsequent installments, it acknowledges its inability to make the payments without impairing its capital. Yet, it argues that the phrase in the contract that stated "installments may be deferred until Purchaser shall be permitted to purchase its securities" maintains the standard for purchase of its own stock set by incorporating the statute into the agreement.

A number of cases are helpful in setting the ground work for decision here. In McConnell v. Estate of Butler, 402 F.2d 362 (9th Cir. 1968), the issue before the court was whether claims of debenture holders who took debentures as payment for stock held by them should be subordinated to claims of general creditors. In deciding the question of priorities, however, the court considered two aspects of the transaction between the corporation and employees who held stock.

It first observed that for the repurchasing agreement to be valid the corporation must have had under California law, an earned surplus to pay for stock "at the time when the agreement was made." Id. at 366. Yet the court did not explore that statement any further in light of basing its decision on the second rationale. In answering the question of whether the agreement was enforceable, the court held that for it to be so the corporation must have an earned surplus "at the time payment is to be made." Id. In making that statement the Circuit Court cited a portion of In re Trimble Company, 339 F.2d 838, 843 (3d Cir. 1969). It also relied on Robinson v. Wangemanor, 75 F.2d 756 (5th Cir. 1935), another bankruptcy proceeding where on the question of enforceability of the contract the court observed among other things that:

> In principle, the contract between [the stockholder] and the corporation was executory until the stock should be paid for in cash. It is immaterial that the corporation was solvent and had sufficient surplus to make payment when the agreement is entered into. It is necessary to recovery that the corporation should be solvent and have sufficient surplus to prevent injury to creditors when the payment is actually made.

Id. at 758.

In re Trimble, supra, was a case where the stockholder accepted notes in return for the transfer of stock back to the corporation. The Third Circuit under Pennsylvania law refused to enforce payment of the unpaid portions on those notes due to the fact that such a payment would be a violation of the law. The court premised its decision on language in Mountain State Steel Foundaries, Inc. v. C.I.R., 284 F.2d 737 (4th Cir. 1960) in which the West Virginia equivalent of the "no impairment of capital" statute governed.

> [w]hen a corporation purchases a portion of its outstanding stock with an agreement to pay for it at a subsequent time, it may not perform its promise if the use of its funds in performance will impair its capital. This is true though earlier performance at the time of consummation of the executory agreement would have occasioned no impairment of capital.
>
> The promise, therefore, is conditional. The corporation's promise is to pay provided at the time of payment it has sufficient surplus that disbursement of the funds will occasion no impairment of capital. In effect, the statute is read into the agreement.

Id. at 843.

It would appear then that courts will not aid a party in the enforcement of a contract for repurchase where the payments will impair the capital of the corporation. The policy behind such a rule is one which expresses as its principal concern the protection of the rights of creditors, not for the rights of the stockholders of the corporation.

No court has yet tested whether the seller may rescind the contract if payment is not made.

 Under the Delaware statute, I must conclude that corporations are not forbidden from entering into agreements which provide for the repurchase of stock. See, generally, Alcott v. Hyman, 208 A.2d 501 (Del.Sup.Ct. 1965). The only requirement is that funds of the corporation not be used to purchase if their use would jeopardize the financial position of the entity. West Penn. Chemical and Manufacturing Co. v. Prentice, 236 F. 891 (3d Cir. 1916); Goldman v. Cappola, 179 A.2d 817 (Conn. 1962). As another court, while construing a similar statute, has observed, "[t]he repurchase of stock is not void at its inception; rather, it is the impairment of capital resulting from repurchase payments which is verboten." Rainford v. Bytting, 22 Utah2d 252, 451 P.2d 769 (1968). The Delaware statute expressly confers on a corporation the power to purchase its own stock provided it can do so without impairing capital. Ashman v. Miller, 101 F.2d 85 (6th Cir. 1939); see also Acker v. Girard Trust, 42 F.2d 37 (3d Cir. 1930). Therefore in event that payments are made under the terms of the contract, it is then and only then that the issue of capital impairment would arise. If capital were impaired by payment, public policy would at that time require the intervention of the courts. This is particularly true where the parties in the agreement have made provision for the postponement of payments when it is found that such a payment would violate the statute. As I find the agreement valid because of the terms of the contract an action for rescission is premature, in my opinion. It goes without saying, however, that the purchase agreement may not remain in its executory or conditional limbo status forever. The plaintiff has already complied with the terms of the contract, as they apply to him and transferred his stock to the corporation. At some point

in time, equity will demand that the contract be rescinded if the seller does not receive the consideration that be bargained for. But that issue must be left for later resolution. At present there is no need for a preliminary injunction.

## JUDGMENT

For the reasons more fully explained in the Memorandum Opinion filed this even date, it is hereby ADJUDGED that:

1. The motion of the plaintiff for summary judgment is DENIED;

2. The motion of the plaintiff for a preliminary injunction is similarly DENIED; and

3. The motion of the defendant for summary judgment is GRANTED, but without prejudice to the plaintiff's right to refile his suit at an appropriate time.