# MAWHINNEY et al. v. JENSEN et al.

No. 7537.   Decided June 12, 1951.   (232 P. 2d 769.)

See 55 C. J., Sales, sec. 23. Mistake, reformation of sale contract because of. 45 Am. Jur., Reformation of Instruments, sec. 47; 31 A. L. R., 384.

*Glen M. Hatch,* Salt Lake City, *George B. Stanley,* Heber, *B. Z. Kastler, Jr.,* Salt Lake City, for appellants.

*L. C. Montgomery, Edward L. Montgomery,* Heber, *Wm. D. Callister,* Salt Lake City, for respondents.

WOLFE, Chief Justice.

This is an action to recover the value of personal property which plaintiff vendees allege was fraudulently removed from the premises between the time of execution of an earnest money agreement and the final uniform real estate contract for the sale of the hotel. The trial court sustained a demurrer to plaintiffs' amended complaint and entered judgment for the defendants. All facts well pleaded are admitted by defendants' demurrer. *Bracklein* v. *Realty Ins. Co.,* 95 Utah 490, 80 P. 2d 471. In this opinion, where the parties are referred to in the singular, we mean the plaintiff, Mr. Mawhinney, and the defendant, Mr. Jensen.

Defendants, John A. and Anna Jensen, were the owners and operators of property known as the Jensen Hotel in

Heber City, Utah. This consisted of a two story hotel, a restaurant-coffee shop and fourteen cabins. The plaintiffs, Wilbur and Ruth Mawhinney, desired to purchase this property and on September 14, 1946 entered into a written earnest money agreement (hereafter called the preliminary contract). Plaintiffs paid $1,000 to secure the purchase and apply to the down payment of $10,000. The total purchase price was $35,000. Defendants agreed to relinquish possession November 1, 1946, at which time a uniform real estate contract was to be executed. If the plaintiffs failed to complete the purchase, the $1,000 was to be retained as liquidated damages. Taxes, rents and insurance were prorated as of the date of closing. It was further agreed that execution of final transfer papers would abrogate the preliminary contract. This preliminary agreement provided that all stock and fixtures *"now on the premises"* (emphasis added) were to be included in the sale. Plaintiff examined the fixtures and merchandise at the time and orally agreed that the defendant might take from these supplies until transfer of possession, but all of the items which defendant might use were to be replaced.

Plaintiff visited the premises on two occasions before the closing date and requested that he be permitted to inventory the personal property. On each occasion the defendant told the plaintiff that he was too busy—that he did not have time and would not allow the plaintiff to take the inventory alone. On October 28, 1946, the parties assembled in the lobby of the hotel to execute the uniform real estate contract (hereafter called the final contract). Plaintiff again requested that he be permitted to inspect the storerooms and determine whether all the stock which was on hand at the time of the preliminary contract was still there, or had been replaced. The defendant acted greatly offended that the plaintiff should question his honesty and insisted that nothing had been removed from the premises and that all the items which had been used were replaced. The defendant told the plaintiff that he would be in default under the

terms of the preliminary agreement if he failed to execute the final contract. The defendant's attorney was present and told the plaintiff that "John is an honest man," "that John would keep the stock up," and that "I've known him for years." The plaintiff signed the final contract. Contained therein was a clause which provided that, "all improvements, fixtures, equipment, signs, merchandise and stock *now* on the premises" (emphasis added) was included in the sale. An itemized list of the personal property was attached to the contract. This list described goods actually upon the property at that time and these items passed under the contract. However, this list did not purport to include items of restaurant stock and merchandise.

In June of 1949, 32 months later, the plaintiffs brought this lawsuit, alleging that between the time of the preliminary and final contracts, the defendants had removed such things as a coal stoker, a Ford pickup truck, a cash register, a couch, dishes, sheets, etc., and some 60 items of food in the total amount of $10,766. The complaint states that the plaintiffs were prevented by the tricks and artifices of the defendant from taking any inventory and were induced to execute the final contract by the misrepresentations of the defendant that the stock was the same. The first cause of action in the complaint is divided into three counts alternatively seeking: (1) reformation of the final contract on the ground of fraud and damages for the breach thereof as reformed! (2) damages for misrepresentations that all of the stock which was on the premises at the time of the preliminary agreement was still there or had been replaced; and (3) damages for breach of warranty as to the quantity of personal property sold under the final contract.

By their complaint, plaintiffs affirm the transaction but seek to have the final contract reformed to comply with the intent expressed in the preliminary contract insofar as the fixtures and stock were concerned. Plaintiffs contend that the clause in the final contract with respect to the

148

property "now on the premises" was meant to include the items on the premises at the time the preliminary contract was executed. The defendants contend that the trial court was correct in sustaining the demurrer because the complaint shows that the parties did not intend the preliminary contract to be a final expression of their intent. They maintain that the jurisdiction of equity will not be invoked to reform a contract where it appears that complainants are guilty of laches and were negligent in the execution of the contract.

The equitable doctrine of laches is founded upon considerations of time and injury. ▪

"Laches in legal significance is not mere delay, but delay that works a disadvantage to another." Pomeroy's Equity Jurisprudence, 4th Ed. § 1442; *Chase* v. *Chase*, 20 R. I. 202, 37 A. 804.

We have held in this court that delay will bar equitable relief in a suit for rescission based on fraud. *Taylor* v. *Moore*, 87 Utah 493, 51 P. 2d 222; *Skola* v. *Merrill*, 91 Utah 253, 64 P. 2d 185. Rescission restores the status quo. It effects a return of the parties to their original position before the rescinded transaction took place. Third party rights may intervene or titles may be upset. Such a decree would create an obvious hardship for the vendor if it were granted an unreasonable length of time after discovery of the mistake or fraud by the vendee. But where damages are sought for breach of a contract to the established by reformation, the lapse of time in and of itself does not generally constitute laches. There must also be a showing of injury or prejudice caused by the delay. *Home Owner's Loan Corp.* v. *Bank of Arizona*, 54 Ariz. 146, 94 P. 2d 437, 45 Am. Jur., Reformation of Instruments § 82. In reformation cases there seems to be less likelihood that the passage of time will cause an inequitable disadvantage then in cases asking for rescission. In *George* v. *Fritsch Loan & Trust Co.*, 69 Utah 460, 256 P. 400, the court denied reformation of a sales contract which had mistakenly omitted

restrictive covenants against garages because the Trust Company had acquiesced for 26 months in George's reliance upon the contract in building a $1,000 garage upon the lot. There the prejudice caused by the laches is plainly evident. Any analogy drawn to the Statute of Limitations does not aid the defendants for in this jurisdiction an action upon a contract may be commenced within six years, U. C. A. 1943, 104-2-22. Because the remedy of reformation and defense of laches sought to be interposed are both creations of equity, the mere passage of 32 months without any showing of prejudicial injury does not constitute laches as a matter of law. The question of laches can only be determined under the circumstances of each case and there must be a finding that the delay has inequitably prejudiced the defendant before the remedy is barred. There is no indication in the complaint that defendants have altered their position or that they have been misled to their damage by plaintiffs' delay in commencing this action. Therefore it is necessary that evidence be received to determine whether defendants have been inequitably prejudiced by plaintiffs' forestalling to sue until this time.

The defendants argue that there can be no reformation because the preliminary contract shows on its face that it did not represent a final expression of the parties intent. This is shown, say defendants, by the provisions to adjust taxes, rents, insurance, etc., to the date of the final contract. The vendors were given the right to change their minds and cancel the preliminary agreement if they chose to do so. The preliminary contract stated,

"It is further agreed that the execution of final transfer papers abrogate this Earnest Money Receipt."

Before any instrument can be reformed it is necessary that there be pre-existing terms on which the minds of the parties have agreed. But the intention of the parties to execute a final contract does not extinguish

the fact that certain terms may have been agreed upon at the time of the preliminary contract.

Adjusting the taxes, etc., prorata is not material to the intention of the parties as to what personal property was to be included in the final transaction. If defendants' contentions are sound, parties could prevent reformation of any instrument by inserting in the preliminare contract a clause which abrogates it when the final contract is closed. Ordinarily, a final contract does represent the final meeting of the minds, and in it are merged all the terms expressing the final intentions of the parties and any augmentations. If there are inconsistencies between the terms of the preliminary and final contracts, those of the latter will ordinarily govern. But where it may be clearly shown that the terms used in the latter instrument did not correctly embody the prior intention of the parties because of inadvertence, ambiguity or fraud, evidence as to what was really intended by the terms of the instrument or what was inadvertently omitted or added may be shown by clear and convincing evidence.

The ambiguity in the final instrument lies in the use of the simple word "now." If "now" refers to the date when the final instrument was signed, to wit, October 28, 1946, then either the intentions of the parties had changed since September 14, 1946 (date of the preliminary contract), or the word "now" was meant to refer to September 14th, when that word was used. The fact that the defendant dissuaded the plaintiff from taking an inventory, and insisted that othing had been removed, indicates that defendant's intentions alone had undergone a change. The plaintiffs never concurred in a new meaning of the word "now." If the defendant, knowing that chattels and merchandise had been removed since the date of the prelminary contract without being replaced, and also knowing that it was the intention of the parties that such personal property was to be included in the transfer, and intentionally caused the word "now" to be inserted in the final instru-

ment instead of the phrase "as of September 14th, 1946," and was also aware that the plaintiffs were unaware what the literal language meant as used in the final instrument, it would have been fraudulent on their part and a mistake on the part of the plaintiffs, and a fortiori, reformation should be granted. The fact that an itemized list of the personal property was attached to the final contract does not preclude a showing that the mutual intent was to sell all the stock and fixtures on the premises at the time of the preliminary agreement. As far as personal property was concerned the complaint states that the first contract was a final binding agreement.

There is a line of authority that equitable relief from fraud will not be granted where the party was negligent in relying upon misrepresentations under grossly suspicious circumstances. *Carpenter* v. *Hamilton*, 18 Cal. App. 2d 69, 62 P. 2d 1397. Exceptions to this rule are found in cases where an examination of the subject matter would require special training or technical knowledge. *Stuck* v. *Delta Land & Water Co.*, 63 Utah 495, 227 P. 791 (technical knowledge required to determine whether white substance in soil was alkali or gypsum). At the present stage of this action, the defendants have not denied the charges of fraudulently removing the property. On the other hand defendants claim that the circumstances were so suspicious that the injury of which plaintiffs complain was the result of their own carelessness. The plaintiff was prevented from taking an inventory on two occasions before the closing date and then signed the final contract after unsuccessfully trying a third time to look through the storerooms. On one side there was a mistake which might be said to be due to the natural oversight of the significance of the word "now," but on the other hand, there was fraudulant concealment of the facts and dissuasion from making a sufficient investigation. The acts complained of were not misrepresentations in the preliminary negotiation of the contract, such as statements relating

to value or quality, but were the beguilment of the plaintiffs into believing that no property had been taken and that the meaning of the final contract was the same as that previously agreed to. The defendants now contend that their conduct was of such a tortious nature that the plaintiffs acted without reasonable diligence in relying thereon and concluding the contract.

Where a vendor fradulently allays suspicion and prevents an inspection which would reveal the truth, while at the same time encouraging the completion of the contract, the purchaser is entitled to rely on the misrepresentations so as to be entitled to maintain an action based on fraud. *Riverside Rancho Corp.* v. *Cowan,* 88 Cal. App. 2d 197, 198 P. 2d 526. In *Adamson* v. *Brockbank,* 112 Utah 52, 185 P. 2d 264, we quoted from Black on Rescission of Contracts, paragraph 68 page 172, for the proposition that if a defrauded party is dissuaded or prevented from making a sufficient investigation he is entitled to rely on the misrepresentation made to him.

We do not overlook the fact that plaintiffs signed the final contract which was unambiguous in its terms that the merchandise and stock *"now"* on the premises was to be included. *In Bennett* v. *Bowen,* 65 Utah 444, 238 P. 240, this court held that even though defendants who signed the contract were negligent in not reading it, it is no defense where they signed under mistake of fact or misrepresentations.

"Ordinarily, a party [has] a right to rely upon the fact that the formal document prepared by the other will express their original and definitive agreement; he may expect and rely upon literal conformity if no notice to the contrary is given." *Tokio Marine & Fire Ins. Co.* v. *National Union Fire Ins. Co.,* 2 Cir., 91 F. 2d 964, 966.

Plaintiffs misinterpretation of the terms of the final contract is a factor which may be weighed by the trier of facts in determining the extent of plaintiffs' negligence under the circumstances. In any event the case should pass

the point of demurrer and evidence should be presented to determine whether the plaintiff acted so unreasonably in executing the contract that he is now barred from equitable relief.

"Situations which call for the measurement of conduct by the standards of ordinary care usually present questions of fact for the jury". *Carpenter* v. *Hamilton,* supra [18 Cal. App. 2d 69, 62 P. 2d 1400].

We also point out that parol evidence is always admissible to show fraud, even though it has the effect of varying the terms of the written contract, *Riverside Rancho Corp.* v. *Cowen,* supra; *Lufty* v. *R. D. Roper & Sons Motor Co.,* 57 Ariz. 495, 115 P. 2d 161. It follows that the complaint stated a cause of action for reformation.

The second count in plaintiffs' amended complaint seeks damages for defendant's fraudulent misrepresentations that no property had been removed from the premises which was not replaced. The complaint sufficiently alleges that the plaintiffs had the right to rely on the misrepresentations. Whether the plaintiffs did in fact have the right to rely under the suspicious circumstances is explained above in relation to the claimed negligence of the plaintiff concluding the contract.

"The right to sue for deceit which is based on the assumption that the fraudulent transaction is to stand does not require prompt action by the injured party. The statute of limitations is enough to prevent excessive delay". Williston on Contracts, Revised Ed. § 1526.

It is not as if equity were asked to rescind the contract on the ground that it had been obtained by fraud. There, where the defendant may have changed his position, thinking the matter at rest, laches may be interposed as a defense. See reference to laches as applied to reformation, supra.

In *Beaver Drug Co.* v. *Hatch,* 61 Utah 597, 217 P. 695, the defendant sold the plaintiff a drug store and falsely rep-

resented that there was $4,000 worth of stock. Plaintiff sued for the difference between the actual value of the stock and $4,000. We affirmed the judgment for the plaintiff. That case is not distinguishable as a matter of law on the ground that there the plaintiff had a right to rely, while in the instant case he was put on notice that the representations were false. The extent of plaintiff's knowledge of the fraud and the question of his exercising due diligence are issues of fact for the fact finder. *Carpenter* v. *Hamilton,* supra. It was error to sustain the demurrer to the counts for reformation and deceit.

In the third count of the first cause of action, plaintiffs base their claim to recover damages for the shortage of personal property on the theory of breach ██ of warranty. The complaint states

"that the defendant, John A. Jensen, represented and warranted to the plaintiffs that 'all of the stock that was on the premises at the time of the execution of the earnest money agreement was still there or had been replaced * * *.'"

The second cause of action is framed as a breach of warranty said to arise from the failure of a heating system on the premises to conform to the standard of quality imputed to it by defendants. The pleading upon these two matters is fatally defective as a matter of law under the Sales Act adopted in Utah. Section 81-3-9, Utah Code Annotated, 1943, provides in part:

"But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

A survey of the cases on this matter shows that timely notice is a vital condition precedent to an action for breach of warranty, *Esbeco Distilling Corp.* v. *Owings Mills Distillery,* D. C., 43 F. Supp. 380; *Pearl* v. *William Filene's Sons Co.,* 317 Mass. 529, 58 N. E. 2d 825; *Baum* v. *Murray,* 23 Wash. 2d 890, 162 P. 2d 801. Thirty-two months is, in

law, an unreasonable delay under the circumstances of this case. *Harburger* v. *Stern Bros.*, Sup., 189 N. Y. S. 74; *Stewart* v. *B. R. Menzel & Co.*, 181 Minn. 347, 232 N. W. 522. The statute insists on notice within a reasonable time, but laches in equity only arise when the delay has caused prejudicial injury. Therefore the passage of time in and of itself bars the breach of warranty action, but not the remedy of reformation. In the instant case it is impossible to believe that the plaintiffs did not discover, long before 32 months had elapsed, that a couch, a stoker, dishes, sheets and 8 steam radiators, etc., were missing. The complaint states that the defectiveness of the heating system was discovered two weeks after the final contract was signed. The demurrer was properly sustained on the two claims for breach of warranty. The case is reversed and remanded with directions to proceed in accordance with the views expressed herein. Costs awarded to appellant.

WADE, LATIMER, McDONOUGH, and CROCKETT, JJ., concur.