**Tamo MAYNARD and David Fischer, Plaintiffs and Appellants,**

v.

**Thomas WHARTON, Jr.; and William Roberts, Defendants and Appellees.**

No. 950204–CA.

Court of Appeals of Utah.

Feb. 23, 1996.

Rehearing Denied March 18, 1996.

---

Robert H. Wilde, Kelly DeHill, Midvale, for Appellants.

David T. Aagard, Fred Biesinger, Salt Lake City, for Appellees.

Before ORME, BENCH, and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Tamo Maynard and David Fischer (buyers) appeal the trial court's grant of summary judgment dismissing their complaint against Thomas Wharton, Jr. and William Roberts (sellers). Buyers alleged breach of contract, negligent misrepresentation, and fraud arising from their purchase of real estate from sellers. Buyers also appeal the trial court's order awarding attorney fees to sellers. We affirm in part and reverse in part.

## FACTS

Buyers negotiated to purchase from sellers approximately twenty-five acres of undeveloped property in Bluffdale, Utah. Sellers previously had obtained a preliminary survey and plat that divided the parcel into nineteen lots. The preliminary plat erroneously included a parcel slightly over one acre—Lot 15—that sellers did not own. During their negotiations, sellers gave buyers a copy of the erroneous preliminary plat. Buyers tendered an earnest money agreement that described the property as follows: "25 acre parcel Sidwell # 33–09–451–004 as per listing # 307269." One of several subsequent addenda to the earnest money agreement described a portion of the property as "lots 10 through 15," referring to the erroneous preliminary plat.

Almost two months after buyers tendered the earnest money agreement, sellers faxed to buyers a copy of sellers' warranty deed to the property. That deed's metes and bounds description included an explicit exception describing the area erroneously labeled Lot 15. Negotiations continued for another two months, during which time both sellers and buyers continued to believe Lot 15 was included in the twenty-five acre parcel. Shortly before closing, buyers learned that sellers did not hold title to the parcel labeled Lot 15 on the preliminary plat. Buyers contacted sellers, who initially insisted they owned Lot 15. However, six days before closing, sellers notified buyers that sellers in fact did not own Lot 15 and that sellers could not convey Lot 15 to buyers.[1]

---

1. Sellers assert they did not deliberately mislead buyers. Sellers attribute the mistake in the pre- liminary plat to a surveyor error of which sellers were ignorant.

Buyers and sellers met at the title company but could not resolve the issue of Lot 15. Buyers and sellers agreed to meet again and close the sale. At the closing, buyers hand delivered a short memo addressed to sellers and the title company. The memo's reference line stated: "Instructions for closing of property at 2700 West 150000 South." Those "Closing Instructions" stated:

> Enclosed herewith are our checks totaling $48,892.44 representing the down payment referenced in the Earnest Money Sales Agreement dated June 14, 1993. Guardian Title Company is authorized to disburse these funds and Mr. Wharton and Mr. Roberts are authorized to accept them with the understanding that we are reserving our rights to dispute whether the transaction includes and we were sold the property identified as lot 15 on the preliminary plat and the right to claim damages and fees under paragraph "N" of the Earnest Money Sales Agreement. If this reservation is not acceptable the checks are to be returned to us and the closing is not to proceed.

Neither buyers nor sellers signed the "Closing Instructions." The parties proceeded with the closing and signed a warranty deed, trust deed, trust deed note, and associated closing documents. None of those closing documents referred to or incorporated the "Closing Instructions" that buyers had delivered to sellers and the title company. Buyers recorded the warranty deed and took possession of the property.

Approximately one month after the closing, buyers filed the instant suit, alleging breach of contract, negligent misrepresentation, and fraud. Sellers moved for summary judgment, arguing that the earnest money agreement's abrogation clause and the doctrine of merger precluded buyers from maintaining a cause of action based on an earnest money agreement after buyers accepted the warranty deed. The trial court granted sellers' motion. Sellers then moved for attorney fees and costs, relying on a provision of the earnest money agreement regarding default and attorney fees. The trial court granted sellers' motion for fees and costs and entered a judgment against buyers. Buyers appealed.

## ISSUES AND STANDARD OF REVIEW

On appeal, buyers argue that issues of material fact surrounding their claims preclude summary judgment. Buyers also argue that sellers are not entitled to attorney fees because sellers did not show that buyers defaulted on the earnest money agreement. Buyers' appeal thus presents two issues for our review: first, whether the doctrine of merger applies and entitles sellers to summary judgment; and second, whether sellers may recover attorney fees under the earnest money agreement.

Both issues present a question of law that we review for correctness affording no particular deference to the trial court. *See Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988) (awardablity of attorney fees); *Secor v. Knight,* 716 P.2d 790, 792–93 (Utah 1986) (applicability of merger doctrine); *see also State v. Richardson,* 843 P.2d 517, 518 (Utah App.1992) (stating "we consider the trial court's interpretation of binding case law as presenting a question of law and review the trial court's interpretation of that law for correctness").

## MERGER DOCTRINE

 It is well settled that the merger doctrine applies in Utah. The Utah Supreme Court has explained the merger doctrine as follows:

> The doctrine of merger ... is applicable when the acts to be performed by the seller in a contract relate only to the delivery of title to the buyer. Execution and delivery of a deed by the seller then usually constitute full performance on his [or her] part, and acceptance of the deed by the buyer manifests his [or her] acceptance of that performance even though the estate conveyed may differ from that promised in the antecedent agreement. Therefore, in such a case, the deed is the final agreement and all prior terms, whether written or verbal, are extinguished and unenforceable.

*Stubbs v. Hemmert,* 567 P.2d 168, 169 (Utah 1977) (footnotes omitted); *accord, e.g., Secor v. Knight,* 716 P.2d 790, 793 (Utah 1986); *Schafir v. Harrigan,* 879 P.2d 1384, 1391–92 (Utah App.1994); *Embassy Group, Inc. v. Hatch,* 865 P.2d 1366, 1370 (Utah App.1993). The doctrine of merger is "routinely applied when an antecedent agreement contains an abrogation clause." *Embassy Group,* 865 P.2d at 1371. Moreover, "a deed is tantamount to a final real estate contract and usually abrogates a preliminary earnest money agreement containing an abrogation clause." *Id.* The abrogation clause at issue here is typical; it provides: "Except for express warranties made in this Agreement, execution and delivery of final closing documents shall abrogate this Agreement." In other words, an abrogation clause is a contractual statement of the common law doctrine of merger.

■ The merger doctrine has four discrete exceptions: (1) mutual mistake in the drafting of the final documents; (2) ambiguity in the final documents; (3) existence of rights collateral to the contract of sale; and (4) fraud in the transaction. *See Secor,* 716 P.2d at 793; *Embassy Group,* 865 P.2d at 1371–72. In the present case, buyers contend their "Closing Instructions" preclude application of the merger doctrine. Buyers argue the "Closing Instructions" memorialize the parties' intent regarding the sale of the twenty-five acres and thus sustain the earnest money agreement's viability after closing. Our analysis reveals, however, that the "Closing Instructions" do not fall within one of the merger doctrine's four exceptions. Buyers concede the exceptions for mutual mistake and ambiguity do not apply to the present case. Consequently, our analysis focuses on the collateral rights and fraud exceptions.

■ First, the exception for collateral rights "applies when the seller's performance involves some act collateral to the conveyance of title." *Embassy Group,* 865 P.2d at 1372. For example, terms in an earnest money agreement requiring sellers to remove certain equipment from their property are collateral to conveyance of the property; therefore, a deed does not extinguish those

terms. *Stubbs,* 567 P.2d at 170. "[T]he question of whether a specific term is or is not collateral, and hence whether the term will or will not merge into the deed, is determined by the intent of the parties." *Secor,* 716 P.2d at 793. However, Utah courts need not look to the parties' intent on issues relating to title and encumbrances because such issues "relate to the same subject matter as does the deed." *Id.*

Issues relating to title are central rather than collateral to agreements for the sale of real estate. Accordingly, buyers' reliance on the "Closing Instructions" as evidence of the parties' intent is misplaced. Because the issue of Lot 15 relates to conveyance of title, the parties' intent regarding Lot 15 is irrelevant after delivery and acceptance of the deed. The merger doctrine's collateral rights exception thus does not apply because this case involves terms relating to title.

■ Next, the exception for fraud applies when the party seeking to avoid merger can prove by clear and convincing evidence that the other party committed fraud in the real estate transaction. *Id.* at 794. In Utah, the elements of fraud are the following:

(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he [or she] had insufficient knowledge on which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his [or her] injury and damage.

*Dugan v. Jones,* 615 P.2d 1239, 1246 (Utah 1980) (footnote omitted). Buyers admit they knew sellers could not convey Lot 15 to them at least six days before they accepted the final closing documents. Consequently, buyers cannot establish that they acted reasonably and in ignorance of the falsity of sellers' earlier representations about Lot 15. Buyers thus, as a matter of law, cannot establish fraud, and "[i]n the absence of fraud, the

merger doctrine applies." *Secor*, 716 P.2d at 794.

The supreme court has described the merger doctrine as "an admittedly harsh rule of law." *Id.* Nevertheless, Utah adheres to the merger doctrine because it "preserves the integrity of the final document of conveyance and *encourages the diligence of the parties.*" *Id.* at 795 (emphasis added). Parties to real estate transactions have a duty "to make certain that their agreements have in fact been fully included in the final document." *Id.* In the present case, buyers claim that delivering their "Closing Instructions" to sellers and the title company fulfilled their duty of diligence. We disagree. Parties to real estate transactions must ensure that any agreements involving conveyance of title are incorporated into the final closing document, which is usually a warranty deed. Buyers' "Closing Instructions" were not incorporated into the deed that sellers tendered and buyers accepted. Accordingly, the "Closing Instructions" have no legal significance.

In sum, parties to the sale of real estate must confirm that all agreements relating to conveyance of title are incorporated into the deed before they tender or accept it. Subject to limited exceptions, the merger doctrine remains viable in Utah and extinguishes all antecedent agreements upon delivery and acceptance of a deed. Buyers' claims involve the conveyance of title; therefore, the merger doctrine's exception for collateral rights does not apply and the parties' intent is irrelevant. Buyers admit they knew that sellers could not convey Lot 15 for six days prior to closing; therefore, the merger doctrine's exception for fraud does not apply. The trial court correctly concluded the merger doctrine precludes buyers' suit and properly granted sellers' motion for summary judgment. Accordingly, we affirm the trial court's order dismissing buyers' complaint with prejudice.

### ATTORNEY FEES UNDER EARNEST MONEY AGREEMENT

In Utah, attorney fees authorized by contract are awardable only in accordance with the explicit terms of the contract and only to the extent permitted by the contract. *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982); *Mountain States Broadcasting Co. v. Neale*, 783 P.2d 551, 555–56 (Utah App.1989). Parties seeking an award of attorney fees under a contract must establish that the contract's terms anticipate such an award. *See Loosle v. First Fed. Sav. & Loan Ass'n*, 858 P.2d 999, 1003 (Utah 1993) (concluding attorney fees provision in trust deed and promissory note did not contemplate attorney fees for quiet title action).

In the instant case, the only basis for attorney fees that sellers presented to the trial court was the earnest money agreement. Paragraph "N" of that agreement provides, in pertinent part:

> Both parties agree that should either party default in any of the covenants or agreements herein contained, the defaulting party shall pay all costs and expenses, including a reasonable attorney's fee, which may arise or accrue from enforcing or terminating this Agreement or in pursuing any remedy provided hereunder or by applicable law, whether such remedy is pursued by filing suit or otherwise.

This contractual provision requires those seeking an award of attorney fees to show that the other party has defaulted on at least one of the covenants or agreements of the earnest money agreement. Sellers argued because buyers did not recognize the abrogation clause's validity, buyers somehow defaulted, and sellers were entitled to attorney fees. Our analysis reveals buyers' nonrecognition of the abrogation clause is not a default anticipated by paragraph "N" of the earnest money agreement.

Sellers point only to buyers' failure to recognize the validity of the abrogation clause as evidence of the default that entitled sellers to attorney fees. Parties to an earnest money agreement cannot default on the abrogation clause. We reiterate: the abrogation clause is a contractual statement of the merger doctrine. Paragraph "O" of the earnest money agreement simply states: "Except for express warranties made in this Agreement, execution and delivery of final

closing documents shall abrogate this Agreement." The provision thus establishes the earnest money agreement's legal termination.

Sellers did not point to any express warranties, covenants, or agreements on which buyers defaulted; therefore, sellers cannot invoke paragraph "N" as a basis for an award of attorney fees. Paragraph "N" has limits; it does not award attorney fees to prevailing parties in every suit related to the earnest money agreement. In short, paragraph "N" does not contemplate an award of attorney fees for sellers just because buyers sued. *See Carr v. Enoch Smith Co.*, 781 P.2d 1292, 1296 (Utah App.1989); *cf. Palmer v. Hayes*, 892 P.2d 1059, 1062–63 (Utah App. 1995) (holding buyers' election of remedy under earnest money agreement was not default that entitled sellers to attorney fees).[2]

In sum, attorney fees may be awarded under the instant contract only when one party can show that the other party has defaulted on an explicit covenant or agreement contained in the earnest money agreement. Sellers did not establish that buyers defaulted on any covenant or agreement and thus have no basis for an award of attorney fees. The trial court incorrectly concluded that buyers' failure to recognize the validity of the abrogation clause constituted a default by buyers. Accordingly, we reverse the trial court's award of attorney fees.

### CONCLUSION

We hold the merger doctrine precludes buyers from bringing their claims after buyers accept and record a deed from sellers. Buyers' "Closing Instructions" do not fall within any exception to the merger doctrine. Therefore, we affirm the trial court's summary judgment in favor of sellers. We further hold the attorney fees provision of the earnest money agreement does not permit an award of attorney fees to sellers in this case. Buyers did not default on the earnest money agreement simply by bringing suit against sellers. Therefore, we reverse the trial

court's award of attorney fees to sellers and vacate the judgment against buyers.

ORME, P.J., and BENCH, J., concur.

---

2. Because we conclude buyers did not establish an adequate basis for the trial court's award of attorney fees, we do not reach issues surrounding sufficiency of evidence for and calculation of the award.